**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

*United States v. James Joseph Wohlers*
Case No. 3:24-CR-00135-TMB-MMS-001

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

## I. FACTUAL BACKGROUND

This matter comes before the Court on disputed enhancements, a disputed loss amount, and a disputed restitution amount in the sentencing of Defendant James Joseph Wohlers ("Wohlers"). Wohlers was indicted on December 18, 2024, on one count of Wire Fraud, four counts of Tax Evasion, and one Criminal Forfeiture Allegation.[1]

On October 10, 2025, Wohlers entered into a Plea Agreement, pleading guilty to Count 1: Wire Fraud in violation of 18 U.S.C. § 1343 and Count 2: Tax Evasion in violation of 26 U.S.C. § 7201.[2] At the February 4, 2026, Change of Plea Hearing, Wohlers admitted the Criminal Forfeiture Allegation.[3] The factual basis for the charges are that, from at least 2013 through 2019, Wohlers, who was employed as General Manager of GBR Equipment/Oilfield Services ("GBR"), based in Anchorage, Alaska, embezzled funds from GBR through unauthorized personal transactions.[4]

The factual basis of the Plea Agreement, the sentencing memoranda in this case, the Presentence Investigation Report, and the testimony of the Government's Forensic Accountant, Rasa Kazaitis, at the October 20, 2026, evidentiary hearing provide the details of Wohlers's conduct. In the course of this years-long offense, Wohlers used GBR funds, for example, to purchase 5 full-fare round-trip airline tickets to Shanghai, China for himself and family members,[5] to purchase luxury items such as a boat[6] and diamond jewelry,[7] and to pay for the construction of a sports facility at his son's school.[8] Wohlers (who was in charge of payroll and accounting) announced employee pay cuts of 5 to 10 percent in November 2015, and additional employee pay cuts of 5 to 15 percent

---

[1] Dkt. 2 (Indictment).
[2] Dkt. 27 (Plea Agreement) at 1–2.
[3] Dkt. 36 (Minute Entry for Change of Plea Hearing).
[4] *Id.* at 6–7.
[5] Dkt. 68 (Revised Final PSR) at 10.
[6] Dkt. 57-2 at 20.
[7] Dkt. 57-2 (Government's Exhibit: FBI Wire Fraud Restitution Amount Overview) at 30 (highlighting a $7,500 payment for Blue Nile Diamond Jewelry).
[8] Dkt. 27 at 8; October 20, 2026, Evidentiary Hearing.

in February 2016 to address the company's "deteriorating financial condition."[9] Although "GBR was experiencing business slowdown due to changes in oil prices and other economic factors[,]" Wohlers continued to use company funds for his personal benefit.[10] Additionally, Wohlers admitted to attempting to evade income taxes.[11]

## II. PROCEDURAL BACKGROUND

Imposition of Sentence ("IOS") in this case was initially set for June 23, 2026.[12] At the June 23, 2026, hearing, the Court raised two issues, noting that two potential enhancements (Obstruction of Justice and Sophisticated Means) were notably absent from the presentence report ("PSR") and that the Loss Amount and the Restitution Amount were not agreed upon by the parties in the Plea Agreement.[13] The Court consequently continued the IOS to August 4, 2026, and set a deadline of July 13, 2026, for the parties to provide briefing on the issues and a status report on the restitution.[14] Both parties submitted brief status reports on July 13, 2026, consisting of minimal argument and neither of which contained any case law.[15] Then, on July 29, 2026, the Government filed a 50-page slideshow exhibit (the Government "Exhibit") with arguments and spreadsheets containing information detailed about Wohlers's alleged financial schemes, his recent apparent delay tactics, and Defense's alleged refusal to confer further regarding the restitution amount.[16]

In light of the Government's Exhibit, and the fact that the Court had not had time to review it, the Court converted the August 4, 2026, Continued Imposition of Sentence into a Status Conference.[17] At the August 4, 2026, Status Conference, the parties indicated that they could not narrow the gap between their positions on the Loss Amount or the Restitution Amount.[18] Both parties requested a full day for an evidentiary hearing for expert witnesses to testify and to allow the victims to speak at sentencing.[19] The Evidentiary Hearing/Imposition of Sentence was initially set for August 31, 2026, and then was rescheduled for October 19, 2026, upon Wohlers's expedited motion to continue.[20]

---

[9] *Id.* at 7; Dkt. 57-2 at 24.
[10] *Id.*; October 20, 2026, Evidentiary Hearing.
[11] Dkt. 27 at 9.
[12] Dkt. 53 (Minute Entry for Status Conference (Imposition of Sentence)).
[13] *Id.*; *see generally* Dkt. 27.
[14] Dkt. 53.
[15] *See* Dkt. 55 (Government's Status Report); Dkt. 54 (Defendant's Status Report).
[16] *See* Dkt. 57-2.
[17] Dkt. 59 (Text Order Converting Hearing).
[18] Dkt. 66 (Minute Entry for Status Conference).
[19] *Id.*
[20] *Id.*; Dkt. 72 (Text Order Resetting Hearing); *see also* Dkt. 69 (Defendant's Motion to Continue Imposition of Sentence); Dkt. 70 (Defendant's Motion to Expedite).)

On August 13, 2026, the Government filed Victim Impact Statements.[21] On August 24, 2026, United States Probation and Pretrial Services ("USPO") filed the Revised Final PSR, applying the contested Obstruction of Justice enhancement and adjusting the Tax Loss total; however, despite the Court having raised the issue at the June 23, 2026, hearing, USPO declined to adopt the Sophisticated Means enhancement in the Revised Final PSR.[22] The same day, the Government filed a Final Sentencing Memorandum containing the Government's revised Guidelines calculation.[23]

The Government's Forensic Accountant with the Federal Bureau of Investigation (the "FBI"), Rasa Kazaitis, testified at the October 20, 2026, evidentiary hearing.[24] Forensic Accountant Kazaitis testified that the amount of funds misappropriated by Wohlers totals $2,590,084.50.[25]

Forensic Accountant Kazaitis testified that these funds were misappropriated through 5 financial schemes: 1) Wohlers paid his personal credit cards from the GBR checking account, 2) Wohlers charged the GBR credit cards for Wohlers's personal expenses and purchases, 3) Wohlers made unauthorized wire transfers and overstated payroll from GBR to Wohlers's personal and Alabama companies' accounts, 4) Wohlers made unauthorized wire transfers from GBR directly to third parties for personal purchases of luxury items, and 5) Wohlers diverted checks to Alabama-based shell companies for services performed by GBR.[26] These schemes occurred from 2013 through 2019; during this time, Wohlers was in charge of payroll.[27] Wohlers used these misappropriated funds, for instance, to pay more than $30,000 for a 2016 Mustang on September 30, 2015,[28] to pay more than $31,000 for construction of a boat dock,[29] to purchase a boat for approximately $60,0000,[30] to purchase more than $8,500 in diamond jewelry,[31] to pay for the construction of a sports facility at his son's school,[32] and to pay off his personal credit cards.[33] Wohlers additionally created shell companies, such as "BGI" for the sole purpose of diverting GBR funds to Wohlers;

[21] *See* Dkt. 67-1 (Government's Exhibit, Notice of Victim Impact Statements).
[22] Dkt. 68 (Revised Final PSR) at 10, 12.
[23] Dkt. 71 (Government's Final Sentencing Memorandum).
[24] October 20, 2026, Evidentiary Hearing.
[25] Dkt. 57-2 at 9.
[26] *Id.* at 8; October 20, 2026, Evidentiary Hearing.
[27] October 20, 2026, Evidentiary Hearing.
[28] Dkt. 57-2 at 13; October 20, 2026, Evidentiary Hearing.
[29] Dkt. 57-2 at 17; October 20, 2026, Evidentiary Hearing.
[30] Dkt. 57-2 at 20.
[31] Dkt. 57-2 at 29–30 (highlighting a $1,003.48 payment for an "Adorable 1/2CT Diamond Cross Pendant 10K White G . . ." and a $7,500.00 payment for Blue Nile Diamond Jewelry).
[32] Dkt. 27 at 8; October 20, 2026, Evidentiary Hearing (Minute Entry for Evidentiary Hearing).
[33] Dkt. 57-2 at 26; October 20, 2026, Evidentiary Hearing.

Forensic Accountant Kazaitis testified that the company BGI served no legitimate business purpose.[34] The Court finds the testimony of Forensic Accountant Kazatis to be credible.

## III. LEGAL STANDARD

### *A. Obstruction of Justice*

USSG §3C1.1 provides that:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.[35]

Application Note 1 to §3C1.1 directs that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."[36]

Application Note 4(D) to §3C1.1 provides several examples of conduct covered by this enhancement, including "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so[.]"[37]

### *B. Sophisticated Means*

USSG §2B1.1(b)(10) states that the Sophisticated Means enhancement is applicable "[i]f . . . the offense [] involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means[.]"[38] This enhancement results in an increase of 2 levels.[39]

---

[34] October 20, 2026, Evidentiary Hearing.
[35] U.S. SENT'G COMM'N, GUIDELINES MANUAL §3C1.1 (Nov. 2025).
[36] USSG §3C1.1, comment. (n.1).
[37] USSG §3C1.1, comment. (n.4(D)) (providing an exception if the conduct occurs contemporaneously to arrest).
[38] USSG §2B1.1(b)(10).
[39] *Id.*

Application Note 9(B) to §2B1.1 expands upon the enhancement:

> "[*S*]*ophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.[40]

*C. Wire Fraud Loss Amount and Restitution Amount*

The Loss Amount and Restitution Amount each must be proven by the Government by a preponderance of the evidence.[41] However, a district court's loss calculation under the Sentencing Guidelines does not limit the restitution amount for which a defendant is liable under the Mandatory Victims Restitution Act (MVRA).[42] The restitution amount may be higher than the Loss Amount; however, a district court must give an adequate explanation as to how it determined the restitution amount:

> The [G]overnment bears the burden . . . of proving the amount of the loss, [pursuant to] 18 U.S.C. § 3664(e) . . . We conclude that § 3664 recognizes that specific findings of fact are necessary at times and contemplates that the district court will set forth an explanation of its reasoning, supported by the record, when a dispute arises as to the proper amount of restitution.[43]

---

[40] USSG §2B1.1, comment. (n.9(B)).
[41] 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," and the Government bears "[t]he burden of demonstrating the amount of loss sustained by a victim as a result of the offense[.]"); *see also United States v. Dadyan*, 76 F.4th 955, 960 (9th Cir. 2023); *United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024) (en banc) ("We join our sister circuits in holding that clear and convincing evidence is not required for factual findings under the Guidelines, even when potentially large enhancements are at stake; fact-finding by a preponderance of the evidence is sufficient to satisfy due process at sentencing.").
[42] *Dadyan*, 76 F.4th at 959 ("There is no categorical rule that restitution must be equal to or less than the amount of loss found when applying Sentencing Guidelines § 2B1.1(b)(1) or similar loss-based Guidelines sections.").
[43] *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008).

*D. Tax Loss*

Title 26 U.S.C. § 6531 controls the Statutes of Limitations ("SOLs") for most criminal tax offenses and provides a three-year SOL for most tax offenses. However, Title 26 U.S.C. § 7201 (under which Wohlers was indicted in December 2024)[44] falls under one of the exceptions and instead applies a 6-year SOL.[45] The SOL begins to run when an offense is completed,[46] and, in the case of Tax Evasion, the offense is considered completed upon the filing of a tax return.[47] "[A] district court may consider as relevant conduct for sentencing purposes actions which may be barred from prosecution by the applicable statute of limitations."[48]

## IV. DISCUSSION

At the outset, the Court notes its duty, outlined by Federal Rule of Criminal Procedure 32[49] and the Sentencing Reform Act,[50] to address disputed portions of the PSR and to ensure the Guidelines range is correct.[51]

---

[44] *See* Dkt. 2 (Indictment) (dated December 19, 2024).

[45] *See* 26 U.S.C. § 6531(2) ("[T]he period of limitation shall be 6 years . . . for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof[.]").

[46] *Toussie v. United States*, 397 U.S. 112, 115 (1970).

[47] *See, e.g.*, *United States v. Galloway*, 802 Fed.Appx. 247, 248–49 (9th Cir. 2020) (citing *United States v. Carlson*, 235 F.3d 466, 470 (9th Cir. 2000)); *United States v. Thompson*, 518 F.3d 832, 856-57 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 487 (2008); *see also United States v. Goodyear*, 649 F.2d 226, 228 (4th Cir. 1981).

[48] *See Williams*, 217 F.3d 751, 754 (holding that, in determining base offense level for an embezzlement offense and in calculating amount of loss, the district court could consider the actions of the defendant that occurred outside the five-year statute of limitations); *see, e.g.*, *United States v. Behr,* 93 F.3d 764, 766 (11th Cir. 1996) (Wire fraud defendant's uncharged conduct resulting in a loss of more than $300,000 could be considered as relevant conduct in sentencing defendant, even if conduct occurred outside statute of limitations); *see also United States v. Matthews*, 116 F.3d 305, 307 (7th Cir. 1997) (Statute of limitations did not restrict what court could consider as "relevant conduct" under Sentencing Guidelines so that, in calculating "loss" that resulted from those statements, court properly considered acts outside the applicable statute of limitations).

[49] *See, e.g.,* FED. R. CRIM. P. 32(i)(1)–(3) ("At sentencing, the court[,] . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and [] may, for good cause, allow a party to make a new objection at any time before sentence is imposed." "The court may permit the parties to introduce evidence on the objections." . . . "At sentencing, the court[,] . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]").

[50] *See, e.g.,* 18 U.S.C. § 3552(b) (authorizing the Court "before or after its receipt of a [PSR]" to "order a study of the defendant" if the Court "desires more information than is otherwise available to it as a basis for determining the sentence to be imposed").

[51] *See Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018).

### *A. Obstruction of Justice*

USPO did not initially apply the two-level enhancement for obstruction pursuant to USSG §3C1.1. In the previous Final PSR (hereinafter, the "Prior PSR"), USPO indicated that Wohlers had entered deceptive transaction names into the GBR accounting system to appear as legitimate business expenses, and, upon his termination from GBR, had deleted approximately 10,000 emails in an attempt to conceal his actions.[52] However, USPO concluded that the enhancement was inapplicable because Wohlers's attempts at concealment were unsuccessful and appeared to be attempts to conceal his actions from GBR rather than from law enforcement.[53]

The Government, in its Status Report and in its Final Sentencing Memorandum, writes that "[d]estruction of evidence material to the investigation is the type of conduct to which [§3C1.1] applies."[54] The Government notes that Wohlers "destroyed evidence . . . once his fraud was detected and he knew an investigation would begin. He reportedly deleted over 10,000 incriminating emails . . . [and] altered the books and records of GHB [sic] to conceal the crimes, an act which affects the company to this day."[55]

Comparatively, Wohlers argues that USPO's initial assessment was correct, arguing that he "attempted to conceal his fraudulent activity from the company and did not take further steps to conceal his activities from law enforcement."[56] Wohlers further cites USSG §3C1.1, arguing that "[t]here is no evidence that Wohlers concealed or attempted to conceal anything once he was alerted to the investigation."[57]

At the October 20, 2026, Evidentiary Hearing, Defense Counsel reiterated his argument that Wohlers's conduct predated an official investigation.[58] Defense Counsel contended that an investigation must ongoing at the time of the obstructive conduct in order to apply the enhancement, asserting that Wohlers did not attempt to obstruct the investigation once he had been contacted about the investigation.[59] The Government responded that an ongoing investigation is not required by the Sentencing Guidelines.[60]

---

[52] Dkt. 40 (Final PSR) at 12.
[53] *Id.*
[54] Dkt. 55 at 2 (citing USSG §3C1.1 comment. (n.4(D))); Dkt. 71 at 2 (citing USSG §3C1.1, comment. (n.4(D))).
[55] Dkt. 55 at 2; Dkt. 71 at 2.
[56] Dkt. 54 at 2 (quoting Dkt. 40 at 21).
[57] *Id.* (quoting USSG §3C1.1, comment. (n.4(D))).
[58] October 20, 2026, Evidentiary Hearing.
[59] *Id.*
[60] *Id.*

From Wohlers's filings and argument at the Evidentiary Hearing, Wohlers considers it relevant that his concealment predated law enforcement investigation and does not believe concealment *from the company* is behavior covered by the enhancement. However, Application Note 4(D) to USSG §3C1.1 provides that "shredding a document or destroying ledgers *upon learning that an official investigation has commenced or is about to commence*)[] or attempting to do so" constitutes Obstruction of Justice.[61] Wohlers's purported intent to conceal his bad acts from GBR rather than from law enforcement is not supported by the record. The Court turns to Application Note 1 to §3C1.1, which directs that "[o]bstructive conduct that occurred prior to the start of the investigation of the [] offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."[62] Here, Wohlers's termination signaled an impending investigation and was immediately succeeded by the destruction of evidence at issue.

The Revised Final PSR now reflects USPO's reassessment and application of the enhancement,[63] but the Court nonetheless addresses the reasoning in the Prior PSR. Here, the Prior PSR indicates that, following his termination, Wohlers deleted approximately 10,000 emails in an attempt to conceal his actions.[64] This conduct appears to fulfill the requirements of §3C1.1 because the emails presumably pertained to the offenses of conviction (Wire Fraud or Tax Evasion) and match the example provided in Application Note 4(D) regarding destruction of documents. Additionally, as Application Note 1 provides, obstructive conduct that occurs "prior to the start of an investigation" is contemplated by the enhancement "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."[65] Intentionally deleting 10,000 emails from GBR's company servers undoubtedly fulfills the "purposely calculated" requirement and was very likely to thwart the investigation because the emails likely contained evidence relevant to the offenses.

The Prior PSR reasoned that, because Wohler's attempts to conceal his fraudulent activity from the company were unsuccessful and because Wohlers's attempts appeared to be related to his desire to hide the emails from his employer rather than from law enforcement, the enhancement was inapplicable.[66] However, there is no requirement that the efforts to conceal be successful, and the contention that his motives were not to evade law enforcement are not supported by any facts in either the Prior PSR nor the Revised Final PSR, especially given Wohlers deleted the emails after he had already been terminated.[67] Additionally, although Wohlers may not have "taken

---

[61] USSG §3C1.1, comment. (n.4(D)) (emphasis added).
[62] USSG §3C1.1, comment. (n.1).
[63] Dkt. 68 at 10, 12.
[64] Dkt. 40 at 12.
[65] USSG §3C1.1, comment. (n.1).
[66] Dkt. 40 at 12.
[67] *Id.* at 10; Dkt. 68 at 10.

further steps to conceal his activities from law enforcement," taking further steps is not required. The Court concludes that Wohlers deleted the emails in an attempt to conceal his crime and accordingly applies the enhancement.

*B. Sophisticated Means*

The Government, in its Exhibit, under "Banking Transaction Manipulations," writes:

> Having full and unrestricted access to initiate, approve, and process ACH and wire transfers in the GBR banking system, WOHLERS was able to make unauthorized payments to his personal and his Alabama companies' accounts.
> By adjusting the accounting string, entering his personal and Alabama companies' accounts, and making the transactions appear business related, WOHLERS was able to continue the financial schemes for years without raising red flags.[68]

The Government, in its Status Report, states that Wohlers created false companies with names similar to GBR in order to make payments to them, falsely identifying real companies as vendors for GBR (so that Wohlers could buy large items like a boat or car) and paying his personal expenses and credit card bills with GBR accounts.[69]

The Government also describes the facts pertaining to Sophisticated Means in its Initial Sentencing Memorandum, noting that Wohlers utilized a "complex scheme of deceit," involving "fictitious transfer descriptions into the GBR accounting system[,]" "[c]reating shell companies and opening bank accounts solely for the purpose of receiving stolen funds[,]" removing other employees' access to GBR accounts, and "[m]anipulating payroll entries to increase his own pay (while insisting there was a need to reduce the pay of employees)."[70]

Wohlers argues that "[t]he offense conduct described in the [PSR] is not especially complex or intricate."[71] He contends that Wohlers's "special position within the company" is what allowed him to accomplish the offense and argues that "[t]hat abuse is adequately and correctly addressed by the two-level enhancement for abuse of position of trust under U.S.S.G. §3B1.3."[72]

At the October 20, 2026, Evidentiary Hearing, Defense Counsel further argued that the Sophisticated Means enhancement was inapplicable to Wohlers's conduct because, although he

---

[68] Dkt. 57-2 at 39.
[69] Dkt. 55 at 2.
[70] Dkt. 44 (Government's Initial Sentencing Memorandum) at 3–4; *see also* Dkt. 71 at 2 (citing Dkt. 44).
[71] Dkt. 54 at 3 (citing Dkt. 40 at 9–10).
[72] *Id.*

created and utilized Alabama companies to commit the offense, Wohlers lived and worked in Alabama.[73] Defense Counsel contended that this activity is not comparable to use of "offshore accounts" as described in the Application Note 9(B) of USSG §2B1.1.[74] Moreover, Defense Counsel reiterated his argument that the actions described by the Government as Sophisticated Means are already captured by the two-level enhancement for abuse of position of trust.[75]

The Court notes that use offshore accounts are just one of many examples of conduct constituting Sophisticated Means. Application Note 9(B) provides examples of Sophisticated Means, such as hiding assets or transactions through fictitious entities and the use of corporate shells.[76] Wohlers's actions encompassed much of the conduct described in Application Note 9(B) and go beyond his "special position" within the company; he created fake companies to complete transactions, created shell companies, and opened bank accounts solely for the purpose of receiving stolen funds. The Court resultingly concludes that the Sophisticated Means enhancement is applicable and directs USPO to adjust the Final Revised PSR to include the Sophisticated Means enhancement pursuant to the evidence presented at the Evidentiary Hearing.[77]

*C. Loss Amount and Restitution Amount*

Although the Court may grant Restitution in a different amount from the Guideline Loss Amount,[78] the two are inextricably tied in that here, they are based upon the same set of facts. The parties presented evidence thereof at the Evidentiary Hearing on October 20, 2026. The Court considers the following facts relevant for the purposes of determining the Loss Amount and Restitution Amount.

1. Loss Amount

Wohlers objected to the Loss Amount assessed by USPO in the Final Revised PSR and the resulting total offense level calculation.[79] Wohlers contends the Loss Amount for guideline purposes is under $550,000 and that the enhancement under USSG §2B1.1(b)(1) should thus apply a 12-level enhancement rather than the 14-level enhancement calculated by USPO.[80] The Government contends the loss amount falls between $1.5 and $3.5 million and that the

---

[73] October 20, 2026, Evidentiary Hearing.
[74] *Id.*
[75] *Id.*
[76] USSG §2B1.1, comment. (n.9(B)).
[77] October 20, 2026, Evidentiary Hearing.
[78] *United States v. Dadyan*, 76 F.4th 955, 959 (9th Cir. 2023) ("There is no categorical rule that restitution must be equal to or less than the amount of loss found when applying Sentencing Guidelines § 2B1.1(b)(1) or similar loss-based Guidelines sections.").
[79] Dkt. 68 at 24 (citing USSG §2B1.1).
[80] *Id.* at 24, 11.

enhancement should apply a 16-level enhancement,[81] asserting that Wohlers is "responsible for nearly $3 million in losses to the Treasury and to the victims."[82]

The Revised Final PSR calculated the Loss Amount by using information located in Bates 129866, 129868 through 129870, and 130126 through 130128,[83] resulting in a Loss Amount to GBR of $1,136,000.[84] However, the Court notes that this figure in the Revised Final PSR is incomplete. The $1,136,000 figure only comprises conduct from 2016 through 2019; Wohlers's conduct in this case began in 2013.[85]

In the Plea Agreement, the parties agreed that the intended loss was at least $320,000 but no more than $2,400,000,[86] with the final amount to be agreed upon by the parties prior to sentencing or determined by the Court at sentencing. Notably, subsection (A) of the USSG §2B1.1 Notes to the Loss Table directs that "[l]oss is the greater of actual loss or intended loss."[87]

The preponderance of the evidence standard is the standard of proof required for facts underlying sentencing factors, "even when a fact has an extremely disproportionate effect on the sentence."[88] The party seeking an adjustment bears the burden of proof; thus, when the Government seeks an upward adjustment, it bears the burden of proof.[89] The Court "can certainly rely on a [G]overnment estimate [for loss calculations], but the [C]ourt has the same obligation to ensure 'the information underlying the estimate' possesses 'sufficient indicia of reliability to support its probable accuracy.'"[90] The Court "need not make its loss calculation with absolute precision; rather, it need only make a reasonable estimate of the loss based on the available information."[91] "A district court's determination of loss is a finding of fact to which [the appellate court] must give 'appropriate deference[.]'"[92] "A district court's method of calculation is reviewed de novo while the determination of the amount is reviewed for clear error."[93]

---

[81] *See* Dkt. 55 at 3; *see generally* Dkt. 57-2; Dkt. 71 at 3.
[82] Dkt. 44 at 5.
[83] Dkt. 68 at 11, 24.
[84] *Id.* at 24.
[85] *See id.* at 10.
[86] *See* Dkt. 27 at 11.
[87] USSG §2B1.1(b)(1)(A).
[88] *United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (en banc).
[89] *United States v. Ameline*, 409 F.3d 1073, 1085–86 (9th Cir. 2005) (citing *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990)).
[90] *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999) (citing *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993)) (internal quotations omitted).
[91] *See United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007).
[92] *See* U.S.S.G. §2B1.1, comment. (n.3(C)); *see also Zolp* 479 F.3d at 718 (citing *United States v. Bright*, 353 F.3d 1114, 1118 (9th Cir. 2004)).
[93] *United States v. Ali*, 620 F.3d 1062, 1073–74 (9th Cir. 2010) (citing *United States v. Santos,* 527 F.3d 1003, 1006 (9th Cir. 2008)) (typeface altered).

The Government indicates in its Exhibit that the primary difference in the calculations for Restitution between the parties is due to the difference between the Government's formula and Wohlers's formula.[94] Although the Government provided this information for the purposes of Restitution, the Court finds the formulae differences equally relevant to an assessment of the Loss Amount. The Government's formula, as applied by the FBI is as follows: the **5 Types of Financial Activities, Including Net Payroll - Allowable Transfers and Net Payroll = Misappropriated Amount**.[95] Wohlers's formula is as follows: **5 Types of Financial Activities, Including Net Payroll - Allowable Transfers and Gross Payroll = Misappropriated Amount**.[96] This leads to a discrepancy of $575,472.51 between the parties' calculations.[97]

At the October 20, 2026, Evidentiary Hearing, Wohlers provided no argument nor presented any evidence to support his previous contention that the appropriate Loss Amount as to Count 1: Wire Fraud is under $550,000.[98] Instead, Defense Counsel stated that Wohlers now agrees with USPO's assessment of the Loss Amount as $1,136,000;[99] however, as the Court noted above, this figure only comprises conduct from 2016 through 2019.[100]

By contrast, the Government's Forensic Accountant testified that she had subpoenaed bank records, interviewed GBR employees, and reviewed the financial documents at issue to arrive at the $2,590,084.50 figure for the Loss Amount.[101] Her testimony included a careful explanation of numerous spreadsheets of financial data, and she testified that, without reviewing those bank records, there would have been no way for GBR to know that the expenses made by Wohlers were not legitimate.[102]

Having heard and reviewed the evidence and the parties' arguments, the Court finds that the correct Loss Amount is $2,590,084.50. However, given the parties' agreement that the intended loss was at least $320,000 but no more than $2,400,000,[103] the Court finds the Loss Amount for Guideline calculation purposes is $2,400,000.

---

[94] Dkt. 57-2 at 2.
[95] *Id.*
[96] *Id*
[97] *Id.* at 3.
[98] Dkt. 68 at 24; October 20, 2026, Evidentiary Hearing.
[99] *Id.*
[100] *See id.* at 10.
[101] October 20, 2026, Evidentiary Hearing.
[102] *See generally* Dkt. 57-2; October 20, 2026, Evidentiary Hearing.
[103] *See* Dkt. 27 (Plea Agreement) at 11.

2. Tax Loss

The Government indicated in its Initial Sentencing Memorandum that the Tax Loss amount was $237,221,[104] and the Prior PSR listed the Tax Loss as $286,584.[105] USPO corrected the figure in the Revised Final PSR to $340,584.[106]

Wohlers has not provided a definitive figure for the Tax Loss Amount in his filings, has not objected to the initial Tax Loss figure in the previous PSR, and did not provide argument at the Evidentiary Hearing regarding USPO's most recent figure.[107]

The Government did not provide any explanation for its initial figure for the Tax Loss Amount of $237,221.[108] After conferring with USPO on its new calculations, the Government updated its related Restitution Amount for the Internal Revenue Service (the "IRS") to $340,584; however, the Government did not comment on its Tax Loss Amount.[109] The Government similarly made no additional argument regarding the Tax Loss Amount at the Evidentiary Hearing.[110]

The figure adjustment from $286,584 to $340,584 did not change the Guideline Range for the Tax Evasion offense, and it falls within the parties' agreed-upon range.[111] Defense indicated in its Sentencing Memorandum that the parties agreed "that the tax loss for the years 2016, 2017, 2018, and 2019 was more than $100,000 but not more than $550,000."[112] The Court concludes from the evidence in the record and that the appropriate Tax Loss Amount as to Count 2: Tax Evasion is therefore $340,584.

3. Restitution Amount

Wohlers initially indicated in his Sentencing Memorandum that the "parties have agreed to sever restitution from the sentencing hearing to allow more time for Defendant's expert to obtain and review documentation[,]"[113] and has not provided a recommended restitution amount in his filings. The Government initially recommended a Restitution amount of $2,434,698.71 to GBR and

---

[104] *See* Dkt. 44 at 4.
[105] Dkt. 40 at 10.
[106] *See* Dkt. 68 at 10, 12.
[107] October 20, 2026, Evidentiary Hearing.
[108] *See* Dkt. 44 at 4.
[109] *See* Dkt. 71 at 1.
[110] October 20, 2026, Evidentiary Hearing.
[111] *See* Dkt. 68 at 12 (applying USSG §§2T1.1(a)(1), 2T4.1(G) for an offense involving more than $250,000 but less than $550,000 in Tax Loss); Dkt. 27 at 2.
[112] Dkt. 49 at 1.
[113] Dkt. 49 (Defendant's Sentencing Memorandum) at 1.

$237,221 to the IRS.[114] The Government later amended that recommendation to $2,590,084.50 to GBR and $340,584 to the IRS.[115]

The Government indicated in its Exhibit that the Government's recommended Restitution Amount takes "the most conservative approach" by:

> a) not including additional WOHLERS' personal charges to GBR credit cards;
> b) excluding Amazon purchases during the period 2013 through 2014; and
> c) excluding similar types of misappropriation during the period 2009 through 2012.[116]

The Court acknowledges that it may order separate Restitution and Loss Amounts. Although the Court limited the Loss Amount to the high end of the parties' agreed-upon range in the Plea Agreement ($2,400,000),[117] the testimony and Exhibit presented at the Evidentiary Hearing provided sufficient evidence for the Court to conclude that the appropriate Restitution Amount is $2,590,084.50 to GBR and $340,584 to the IRS.[118]

## V. CONCLUSION

After considering the filings submitted by the parties, the arguments and testimony presented at the Evidentiary Hearing, and for the foregoing reasons, the Court orders as follows:

1. The Court **OVERRULES** Wohlers's objections to the enhancements under USSG §3C1.1 and USSG §2B1.1(b)(10). The Court **APPLIES both the two-level enhancement for Obstruction of Justice and the two-level enhancement for Sophisticated Means** to Wohlers's total offense level;
2. The Court finds the Loss Amount is $2,400,000;
3. The Court finds the applicable Tax Loss Amount is $340,584;
4. The Court **APPLIES** a 16-level enhancement to Wohlers's total offense level; and
5. The Court **ORDERS** Wohlers to pay $2,590,084.50 in Restitution to GBR and $340,584 to the Internal Revenue Service.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: October 20, 2026.

---

[114] Dkt. 44 at 1.
[115] Dkt. 71 at 1.
[116] Dkt. 57-2 at 49.
[117] *See* Dkt. 27at 11.
[118] *See generally id.* October 20, 2026, Evidentiary Hearing.